IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS D. GREENE,

                Plaintiff,

    v.

CITY OF NEILLSVILLE,

                Defendant.

OPINION AND ORDER

08-cv-706-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this civil action for monetary relief, plaintiff Thomas D. Greene contends that defendant City of Neillsville violated Wisconsin's open meetings laws, violated his due process rights and defamed him during a common council meeting. Plaintiff filed this suit in the Circuit Court for Clark County, Wisconsin; defendant removed it on December 9, 2009. Jurisdiction is present under 28 U.S.C. §§ 1331 and 1367.

Presently before the court is defendant's motion for summary judgment, which will be granted in full. No reasonable jury could find that defendant violated plaintiff's due process rights in connection with his firing as Neillsville Cemetery Sexton. Defendant provided plaintiff an adequate pretermination hearing, giving him notice of the charges, an explanation of the employer's evidence against him and an opportunity to respond.

1

Plaintiff's defamation claim fails because all three of the statements that plaintiff contends were defamatory are substantially true. As to the open meetings claim, plaintiff has advised the court that he does not oppose its dismissal.

From the parties' proposed findings of fact, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

Plaintiff Thomas Greene worked as cemetery sexton for defendant City of Neillsville until his termination in 2007. Neillsville is a municipality governed by an elected mayor and an elected five-person common council. According to the city's Code of Ordinances, the cemetery sexton is appointed by the mayor and subject to confirmation by the common council. The city code states that "[t]he Cemetery Sexton . . . shall not be removed except for 'cause' as established by the Common Council, and then only by a three-quarters majority vote of the members-elect of the Common Council."

On September 7, 2007, plaintiff went to work in the morning, but drove back home in a city vehicle after an hour and called David Flynn, the Neillsville Director of Public Works. When Flynn arrived at plaintiff's house, plaintiff told Flynn that someone was up in a tree near his house. Flynn examined the tree, but did not see anyone. Plaintiff refused to accept Flynn's assurance that nobody was in the tree. Plaintiff later told the city's

2

Personnel Committee in a closed hearing held on September 17, 2007, that he had been hallucinating on September 7 because he had taken prescription vicodin and was suffering from a lack of sleep.

Shortly after the September 7 incident, Neillsville's city attorney, Bonnie Wachsmuth, learned about the incident. Wachsmuth also discovered what appeared to be irregularities in plaintiff's reported time cards. In particular, she noticed irregularities in the use and computation of "flex time" on plaintiff's 2007 time cards. On September 11, 2007, Wachsmuth recommended a hearing to discuss concerns about plaintiff's job performance to be held before the four-member personnel committee, which is responsible for investigating personnel issues involving city employees and public officials.

A meeting of the personnel committee was scheduled for September 17, 2007. The deputy clerk told plaintiff about the meeting and explained that at the meeting, the committee would discuss concerns related to plaintiff's employment performance. Plaintiff attended the September 17 meeting and was given an opportunity to respond to the five matters that were raised: (1) the September 7 incident in which plaintiff drove the city vehicle home from work and later claimed that someone was in a tree near his house; (2) an August 31, 2007 incident in which a citizen complained to the deputy clerk that plaintiff had not dug a grave site he was supposed to have dug; (3) alleged irregularities in plaintiff's use and reporting of "flex time" on his time cards; (4) a complaint from two citizens that

3

plaintiff had smelled of alcohol while working; and (5) a verbal confrontation that plaintiff had had with a citizen in 2006 in which the citizen claimed that plaintiff smelled of alcohol.

On September 24, 2007, a second meeting of the personnel committee was held, which plaintiff attended. (The parties dispute whether plaintiff was given notice of this meeting.) Wachsmuth advised plaintiff that she had reviewed his time cards and found that they included more than thirty hours of "flex-time" that had been improperly recorded. Plaintiff responded by stating that he had been instructed by the deputy clerk to fill out his time cards in the way he did. Plaintiff told the committee that his attorney had advised him not to speak. Instead, he presented a written response to the concerns that had been raised during the September 17 meeting and left the meeting without responding further.

The deputy clerk was later called into the September 24 meeting and denied telling plaintiff to fill out his time cards in the manner that he described. After considering all of the evidence regarding plaintiff's job performance, the personnel committee recommended to the Neillsville Common Council that plaintiff be dismissed from his position as cemetery sexton.

On September 25, 2007, the common council met in regular session to discuss the personnel committee's recommendation and findings regarding plaintiff's job performance. Plaintiff did not attend the meeting. (The parties dispute whether plaintiff was told about it.) Wachsmuth presented to the common council plaintiff's written response from the

September 24 personnel committee meeting. During this open session, the mayor of Neillsville, Diane Murphy, stated that plaintiff (a) had gone through a drug and alcohol program in 2001; (b) had lied on his time cards; and (c) had operated a city vehicle while impaired on September 7, 2007. After completing its discussion, the common council voted to terminate the plaintiff from his cemetery sexton position by a vote of three to two. On September 26, 2007, plaintiff received written notice of his termination.

A few days after the September 25 common council meeting, Wachsmuth realized that the city code required a three-quarters majority vote by the common council before the cemetery sexton could be terminated. On Wachsmuth's recommendation, a special session of the common council was held on October 2, 2007. Plaintiff did not attend this meeting. (The parties dispute whether plaintiff was told about it. However, plaintiff's wife and attorney attended the meeting).

During the meeting, Wachsmuth stated that she had additional evidence regarding discrepancies in the plaintiff's time cards that was derived from information uncovered by an independent investigator hired by the city's workers' compensation carrier. The investigator told the council he had video evidence that plaintiff did not work the full eight hours he had reported on his time card for September 13, 2007. The common council subsequently voted unanimously to terminate plaintiff as cemetery sexton.

During an unemployment hearing held after his termination, plaintiff gave sworn

5

testimony that, on at least two occasions, he recorded more hours on his time card than he actually worked.

OPINION

A. Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56(c), a summary judgment motion should be granted when there is "no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law.  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The moving party bears the burden of demonstrating an "absence of a genuine issue concerning any material fact." Adickes v. S. H. Kress & Co., 398 U.S. 144, 159 (1970); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[T]he record and all reasonable inferences drawn from the record" must be viewed "in the light most favorable to the non-moving party." Sample v. Aldi Inc., 61 F.3d 544, 546 (7th Cir. 1995); Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 520 (1991).

B. Due Process

Plaintiff's first claim is that his procedural due process rights were violated because the common council did not conduct an evidentiary hearing prior to his termination.  "The

6

protections of the due process clause apply to government deprivation of those perquisites of government employment in which the employee has a constitutionally protected 'property' interest." Gilbert v. Homar, 520 U.S. 924, 928 (1997). Public employees who can be discharged only for cause have a "constitutionally protected property interest in their tenure and cannot be fired without due process." Id. at 928-29. Defendant does not deny that plaintiff had a property interest in his employment. According to the Neillsville City Code of Ordinances, plaintiff was a public employee who could be removed only for cause.

In evaluating what process was due to plaintiff, the general standard has been articulated by the Supreme Court: "a public employee dismissible only for cause [is] entitled to a very limited hearing prior to his termination, to be followed by a more comprehensive post-termination hearing." Id. at 929 (citing Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985)); Staples v. City of Milwaukee, 142 F.3d 383, 385 (7th Cir. 1998)). The pretermination hearing is essentially an "initial check against mistaken decisions" to help determine "whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Loudermill, 470 U.S. at 545-46. An adequate pretermination hearing has three elements: (1) oral or written notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to tell his side of the story. Gilbert, 520 U.S. at 929 (citing Loudermill, 470 U.S. at 546). It is not intended to be a full evidentiary hearing.

7

Plaintiff received notice of the September 17 personnel hearing a few hours before it took place. At the hearing, he received notice of the five matters that were at issue and had an opportunity to respond to each, which he did by providing his version of the events. Plaintiff also attended a second personnel committee meeting held on September 24, 2007. Again, he was given an opportunity to address the five charges that the committee was considering. He chose not to respond orally, on advice of counsel, but instead presented a written handout in response to the charges and left before .

As far as the five charges that were raised during September 17 meeting, the pretermination hearings satisfied the three elements articulated in Loudermill and reaffirmed in Gilbert. Plaintiff objects to not receiving notice of the October 2 meeting, but by this time, he had been provided his pretermination hearing before the Personnel Committee and was aware that one of the five initial concerns was irregularities in his use and reporting of "flex time" on his time cards generally. He had had a chance to explain his reasons for reporting his time as he did and to deny any improper use of flextime.

"[W]hen adequate post-termination proceedings exist, a pretermination hearing need only provide 'an initial check against mistaken decisions— essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action.'" Michalowicz v. Village of Bedford Park, 528 F.3d 530, 536-37 (7th Cir. 2008) (quoting Loudermill, 470 U.S. at 545-46). See also Schacht

8

v. Wisconsin Dept. of Corrections, 175 F.3d 497, 503 (7th Cir. 1999), overruled on other grounds, Higgins v. Mississippi, 217 F.3d 951 (7th Cir. 2000) (if "there is the opportunity for full administrative review once a termination decision has been reached, the pre-termination hearing can be somewhat truncated").  Plaintiff has not alleged that he did not have an opportunity for a full administrative review after his termination.  Defendant's motion for summary judgment will be denied.

## C. Defamation

Plaintiff has also raised a state law defamation claim, which is governed by Wisconsin law.  Barnes v. Callaghan & Co., 559 F.2d 1102, 1105 (7th Cir. 2007).  Now that I have found that his federal claim must be denied, I could decline to exercise jurisdiction over this state law claim.  28 U.S.C. § 1367(c) (district court may decline to exercise supplemental jurisdiction over state law claim in certain circumstances, one of which is dismissal of all claims over which court had original jurisdiction).  However, the state law claim is straightforward, involving no novel or complex issue of state law.  Deciding it in this case would conserve the resources of the parties and the state courts.

A state law defamation claim must satisfy three elements: "(1) the statement must be false; (2) the statement must be communicated by speech, conduct or in writing to a person other than the person defamed; and (3) the communication must be unprivileged and tend

9

to harm one's reputation so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her." Schindler v. Seifer, 474 F.3d 1008, 1010 (7th Cir. 2007) (citing Torgerson v. Journal/Sentinel, Inc., 210 Wis. 2d 524, 534, 563 N.W.2d 472, 477 (1997)); Storms v. Action Wisconsin Inc., 2008 WI 56, ¶ 37, 309 Wis. 2d 704, 750 N.W.2d 739. "If the challenged statements as a whole are not capable of a false and defamatory meaning, or are substantially true," the claim will fail. Torgerson, 210 Wis. 2d at 534-35 (citing Meier v. Meurer, 8 Wis. 2d 24, 29, 98 N.W.2d 411, 414 (1959)); Maguire v. Journal Sentinel, Inc., 2000 WI App 4, ¶ 15, 232 Wis. 2d 236, 605 N.W.2d 881; Bay View Packing Co. v. Taff, 198 Wis. 2d 653, 688, 543 N.W.2d 522, 534 (Ct. App. 1995). Substantial truth provides a "complete defense to a defamation action." Maguire, 2000 WI App 4, ¶ 15.

Plaintiff's defamation claim rests on three statements made by Mayor Murphy during the September 25 common council meeting: (a) plaintiff had participated in a drug and alcohol program in 2001; (b) he had lied on his time cards; and (c) he had operated a city vehicle on September 7, 2007, while impaired. Defendant contends that all three statements are substantially true and therefore cannot be defamatory. "The doctrine of substantial truth provides that 'slight inaccuracies of expression' do not make the alleged [defamatory action] false." Id. ¶ 17 (citing Lathan v. Journal Co., 30 Wis. 2d 146, 158, 140 N.W.2d 417, 423 (1966)).

10

As to the first statement, it is undisputed that plaintiff received counseling treatment in 2001 for "suspected alcohol dependance." In his brief in opposition to defendant's motion for summary judgment, plaintiff explains that the treatment was required because he had received a citation for driving while intoxicated, not because he was abusing drugs or alcohol. Plaintiff did not propose any facts to support these statements; even if he had, the fact remains that plaintiff did attend the treatment sessions, whatever the reasons or circumstances for doing so. Therefore, Mayor Murphy's statement about plaintiff's going through a drug and alcohol program in 2001 is substantially true and not defamatory.

As to the second statement, it is undisputed that on at least two occasions, plaintiff recorded more hours on his time card than he actually worked. He admitted this under oath at an unemployment hearing. Thus, Mayor Murphy's statement that plaintiff lied on his time cards is substantially true and not defamatory.

As to the third statement, plaintiff does not deny that he drove the city vehicle on the morning of September 7 and was hallucinating that morning because he had taken vicodin and was sleep deprived. Plaintiff contends that by using the term "impaired," Mayor Murphy implied that plaintiff had been using alcohol. "In determining whether language is defamatory, the words . . . must be construed in the plain and popular sense in which they would naturally be understood." Frinzi v. Hanson, 30 Wis. 2d 271, 276, 140 N.W.2d 259, 261 (1966). The word "impaired" does not necessarily imply the use of alcohol; it is a more

11

general term. A dictionary definition reveals that impaired could mean "1. Diminished, damaged, or weakened . . . (2) functioning poorly or incompetently . . . (3) having a physical or mental disability." The American Heritage Dictionary 878 (4th ed. 2000). An individual could be impaired for a number of reasons, including hallucination, use of prescription drugs or lack of sleep. Whatever the cause of his condition, plaintiff was impaired when he drove the city vehicle home on September 7, which means that Mayor Murphy's third statement is substantially true and not defamatory.

Because all three statements were substantially true, I will grant defendant's motion for summary judgment on the defamation claim.

ORDER

IT IS ORDERED that:

1. Defendant City of Neillsville's motion for summary judgment, dkt. #13, is GRANTED with respect to plaintiff Thomas Greene's claims that defendant violated Wisconsin open meetings laws, that he was denied due process before defendant terminated him as cemetery sexton and that Mayor Murphy defamed plaintiff by stating that plaintiff (a) went through a drug and alcohol program in 2001; (b) lied on his time cards; and (c) operated a city vehicle while impaired on September 7, 2007.

2. The clerk of court is directed to enter judgment for defendant and close this case.

Entered this 29th day of July, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

13